UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY LEE POWELL,

        Petitioner,

                                  CASE NO. 2:09-CV-14249

v.                                JUDGE DENISE PAGE HOOD
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

MARY BERGHUIS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

| | | |
|---|---|---|
| I. | RECOMMENDATION | 2 |
| II. | REPORT | 2 |
| | A.  *Procedural History* | 2 |
| | B.  *Factual Background Underlying Petitioner's Conviction* | 5 |
| | C.  *Procedural Default* | 7 |
| | D.  *Standard of Review* | 9 |
| | E.  *Sufficiency of the Evidence (Claims I & II)* | 11 |
| |     1.  *Clearly Established Law* | 11 |
| |     2.  *Analysis* | 13 |
| |         a. "Dwelling" | 13 |
| |         b. Intent | 16 |
| | F.  *Disproportionate Sentence (Claim II)* | 18 |
| |     1.  *Clearly Established Law* | 18 |
| |     2.  *Analysis* | 21 |
| | G.  *Confession (Claim VI)* | 22 |
| |     1.  *Clearly Established Law* | 22 |
| |     2.  *Analysis* | 25 |
| | H.  *Ineffective Assistance of Counsel (Claims IV & V)* | 26 |
| |     1.  *Clearly Established Law* | 26 |
| |     2.  *Trial Counsel* | 29 |
| |     3.  *Appellate Counsel* | 29 |
| | I.  *Cumulative Error (Claim VII)* | 31 |
| | J.  *Recommendation Regarding Certificate of Appealability* | 32 |
| |     1.  *Legal Standard* | 32 |
| |     2.  *Analysis* | 33 |
| | K.  *Conclusion* | 34 |
| III. | NOTICE TO PARTIES REGARDING OBJECTIONS | 35 |

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus, and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

        1.      Petitioner Kelly Lee Powell is a state prisoner, currently confined at the Earnest C.

Brooks Correctional Facility in Muskegon Heights, Michigan.

        2.      On November 7, 2006, petitioner was convicted of second degree home invasion,

MICH. COMP. LAWS § 750.110a(3), following a jury trial in the Oakland County Circuit Court.  On

December 7, 2007, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12,

to a term of 10-20 years' imprisonment.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

        I.      WAS IT ERROR FOR THE TRIAL COURT TO DENY THE
                DEFENDANT-APPELLANT'S MOTION FOR A DIRECTED VERDICT
                ON THE CHARGE OF SECOND DEGREE HOME INVASION WHERE,
                AT THE TIME OF THE INCIDENT, THE HOME IN QUESTION HAD
                BEEN CONDEMNED DUE TO A PRIOR FIRE?

        II.     DID THE INSUFFICIENT EVIDENCE PRESENTED DURING THE
                DEFENDANT-APPELLANT'S TRIAL ON THE ELEMENT OF INTENT
                TO COMMIT LARCENY, TO SUPPORT THE JURY'S VERDICT OF
                GUILTY OF SECOND DEGREE HOME INVASION, CONSTITUTE A
                DENIAL OF THE DUE PROCESS OF LAW GUARANTEED BY THE
                FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION?

        III.    DOES THE TEN YEAR TO TWENTY YEAR SENTENCE, IMPOSED
                PURSUANT TO THE DEFENDANT-APPELLANT'S CONVICTION FOR
                ONE COUNT OF SECOND DEGREE HOME INVASION AS A FOURTH
                HABITUAL FELONY OFFENDER–TO BE SERVED CONSECUTIVE TO
                HIS PAROLE SENTENCE, CONSTITUTE A VIOLATION OF THE
                GUARANTEE AGAINST CRUEL AND UNUSUAL PUNISHMENT
                PROVIDED BY THE UNITED STATES CONSTITUTION AND THE

2

GUARANTEE AGAINST CRUEL OR UNUSUAL PUNISHMENT PROVIDED BY THE MICHIGAN CONSTITUTION?

Petitioner also filed a supplemental *pro se* brief, claiming that trial counsel was ineffective for (a) failing to subject the prosecution's case to meaningful adversarial challenge, (b) giving incorrect advice concerning the application of the sentencing guidelines, (c) failing to advise petitioner of the improbability of acquittal and the benefit of a plea bargain, (d) failing to challenge the admissibility of evidence, and (e) failing to present a necessity defense. The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Powell*, 278 Mich. App. 318, 750 N.W.2d 607 (2008) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Powell*, 482 Mich. 974, 754 N.W.2d 893 (2008).

5.     Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.     APPELLATE COUNSEL WAS INEFFECTIVE AND VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT OF THE U.S. CONSTITUTION IS [sic] GROUNDS TO SATISFY GOOD CAUSE AND ACTUAL PREJUDICE OF MCR 6.508(D).

II.    DEFENDANT'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF SIXTH AMENDMENT U.S. CONSTITUTION CAUSING A WAIVER OF DEFENDANT'S FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION. COUNSEL FAILED TO FILE PRETRIAL MOTION TO SUPPRESS ALLEGED STATEMENT, FAILED TO OBJECT TO THE USE OF THE STATEMENT AT TRIAL AS SUBSTANTIVE EVIDENCE.

III.   PROSECUTOR VIOLATED DEFENDANT'S FEDERAL AND STATE DUE PROCESS. THE USE OF THE INVOLUNTARY OR COERCED STATEMENT OR CONFESSION AT TRIAL. U.S. CONSTITUTION FIFTH AND FOURTEENTH AMENDMENTS.

IV.   THE CUMULATIVE EFFECT OF THE MULTIPLICITY OF ERRORS
      COLLECTIVELY VIOLATES DUE PROCESS.

On September 11, 2009, the trial court denied petitioner's motion for relief from judgment,

concluding that petitioner's ineffective assistance of appellate counsel and cumulative error claims

were without merit, and that petitioner's prosecutorial misconduct claim was barred by petitioner's

procedural default. *See People v. Powell*, No. 06-209453-FH (Oakland County, Mich., Cir. Ct. Sept.

11, 2009) [hereinafter "MRJ Order"].

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on October 29, 2009, appearing to raise only a claim that trial counsel was ineffective for failing to

move to suppress his statement to the police.  On the same date, petitioner filed a motion to stay the

case so that he could complete exhaustion of the claims raised in his state court motion for relief

from judgment.  The Court granted the motion to stay on November 25, 2009.

7.      The Michigan Court of Appeals and Michigan Supreme Court subsequently denied,

in standard orders, petitioner's applications for leave to appeal the trial court's denial of his motion

for relief from judgment.  *See People v. Powell*, 488 Mich. 1039, 794 N.W.2d 47 (2011); *People v.

Powell*, No. 296087 (Mich. Ct. App. July 28, 2010).

8.      Petitioner filed a motion to lift the stay on March 17, 2011, and an amended petition

on May 3, 2011.  On June 10, 2011, the Court entered an Order lifting the stay, reinstating the case,

and deeming petitioner's amended application filed.  In his amended application, petitioner raises

as grounds for relief the three claims raised by counsel in the Michigan Court of Appeals as well as

the four claims raised by petitioner in his motion for relief from judgment.

9.      Respondent filed her answer on August 9, 2011.  She contends that petitioner's fifth

through seventh claims are barred by petitioner's procedural default in the state courts, and that all

4

of the claims are without merit.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the home invasion of a partially burned house in Pontiac,

Michigan.  The evidence adduced at trial was accurately summarized in the prosecutor's brief on

petitioner's direct appeal:

> In March of 2005, Tommy Winton moved into a newly constructed home that had two stories and a basement located at 348 Russell Street in the City of Pontiac. Winton lived in the home with his wife and children.
>
> On December 12, 2005, Winton's home caught fire from what was later determined to be defective wiring in a smoke detector.  The fire marshal "condemned" the home and told Winton that he could not live in the home because of the smoke and fire damage.
>
> Because the damage to the brand new home was mostly to the second floor of the home, a decision was made by the insurance company to repair the fire damage rather than tear the home down.  The insurance company had the home boarded up and, the next day, a large heater was placed in the home to dry it out in preparation for the repair.  In addition, the utilities were shut off.
>
> In the meantime, the insurance company had Winton and his family placed in a hotel in the City of Pontiac.  Shortly thereafter, the insurance company placed Winton and his family in temporary housing while the repairs to his home were completed.  Winton's intent was to return to his residence to live in it when the repairs were complete.
>
> However, from almost the start, Winton had problems with break-ins into the damaged Russell Street residence.  First, within a few days of the fire, on December 15, 2005, when Winton and his brother went to the home with the permission of the insurance agent to videotape the interior and to retrieve some personal items, they found that someone had broken in through the side door (the front door had been securely boarded up and Winton noted that there were pry marks on the side door). Among items missing from the home were a computer, a stereo, a television set, some compact discs, some pictures that had been hanging on wall.
>
> Winton called the police.  The police arrived and, at that point, Winton looked in other parts of the home to see what was missing.  While in the basement he noticed that his "fishing stuff" had been taken and that his children's Play Station, X-Box, television, and VCR, were also missing.  However, all the copper piping (as well as the furnace, water heater, and freezer) was still present and intact.  One of the builders associated with the insurance company purchased two latches and two padlocks and installed them on the side door.
>
> Winton subsequently told his insurance agent that he still needed to retrieve some items from the home.  The agent responded that he would meet Winton at the

home and allow him to do so.  On December 17th, Winton went to the residence to meet the insurance agent and when Winton got there, he noticed that someone had broken into the home through the boarded-up front door.  However, the intruder(s) had apparently pushed the plywood covering the front door partially back in place once exiting the residence.

Winton again called the police and, once they arrived, took inventory of what was in the home.  Among the items missing were the furnace and hot water heater.  However, the copper piping in the basement was still present.  Someone had to be called to repair the damage to the front door area of the home.

On December 23rd, Winton was driving by his home when he saw a police officer outside of his home.  Winton asked the officer what was going on and, after identifying himself, the officer told Winton that they had been trying to contact him because they had caught someone breaking into his home.  The police officer told Winton that he needed to check the house to see if anything was missing and, if so, to make a report.

When Winton approached the home, he noticed that the front door frame was "pushed up" such that it had to be pulled out in order to gain entry to the home.  With some effort, the door would swing out like a revolving door and still hang.

Winton went inside the home and did not find anything "new" missing on the first floor.  He then went into the basement and noticed that all of the copper piping (except where a person could not reach) had been torn or cut out.  The city water meter was also missing.  He did not see any water damage in the basement.  He did not recognize a pair of cutter/shears as being in his basement previously.  Winton did not know how the cutters/shears got into his basement.

Winton had never given anyone permission (other than one of his neighbors) to check on his home.  He did not give defendant or Victoria Hill permission to go into his home and he did not give anyone permission to remove the copper piping or the water meter from his home.  No person named "Priscilla" had anything to do with his home.

Officer Brian Wood was an eleven-year veteran of the City of Pontiac Police Department.  He was assigned to the road patrol/uniform services division.  On December 22, 2005, Officer Wood was working road patrol by himself (without a partner) in a marked patrol vehicle, during the second shift (3:00 p.m. to 1:00 a.m.).

At approximately 3:40 p.m., Officer Wood was dispatched to a burned out home at the end of Russell Street in the City of Pontiac on the report of breaking and entering in progress, that someone had stolen items out of the home, and that the responsibles [sic] were in a white vehicle.  Officer Wood proceeded to that location, but because of department protocol that required two officers to respond to such dispatches, he stopped short of the residence (348 Russell) and visually observed what was happening from about a block away.

Officer Wood observed a black female come out the front door of the residence and go up to a white Mercury Cougar parked on the street in front of the residence.  The black female went up to the trunk of the Cougar, and then went up to the driver's side door and opened it up and reached into the back seat.

6

At this point, Officer Wood feared that the black female might get into the driver's seat and drive away, so he pulled up, stopped her, and engaged her in a conversation. He asked her about the house and she responded that she was checking on the house for "Patricia." Officer Wood then asked her if Patricia had given her permission to go into the house and the black female responded that Patricia did not actually own the house, but that Patricia's friend owned it.

As Officer Wood spoke with the black female, she became anxious and nervous, eventually getting into the Cougar and "frantically" trying to start it. At this point, Officer Giolette arrived on the scene and, together, they took the black female out of the Cougar. The officers asked her if there was anyone else in the house. The black female responded "no."

At this same time, Officer Wood heard a sound coming from the home as if a metal pipe was falling on concrete. He looked towards the home and noticed that there was a pile of copper pipe sitting by the front porch. There was snow on the ground, but no snow covering the pipe. The officers placed the black female (later identified as co-defendant Victoria Hill) in the back of Officer Giolette's vehicle and decided to see if anyone else was in the home.

The officers approached the home and entered it through the front door, which was wide open. They saw a small pile of copper pipe, a water meter, and some water valves, in a pile at the top of the basement stairs. They went into the basement and saw water steadily dripping/leaking from remnants of a pipe in the ceiling of the basement. There was a small puddle of water in the basement that was not frozen, despite the cold temperature in and outside of the home. The officers saw a pile of copper pipes on the floor as well as a set of shears or tin snips.

The officers did not initially find anyone in the basement. However, when Officer Giolette opened the lid of a chest freezer in the basement, he found defendant inside. The officers asked defendant if there was anyone else in the home. Defendant responded that he was with his girlfriend Victoria. The officers placed defendant under arrest. Defendant spontaneously stated that he saw the "condemned" sign outside of the home and decided to remove "scrap" from the home.

The officers placed defendant in the back of Officer Giolette's vehicle with co-defendant Hill. They had a conversation in the back of the vehicle. They also conversed together from their contingent [sic] lock-ups in the police station.

Pl.-Appellee's Br. on App., in *People v. Powell*, No. 275846 (Mich. Ct. App.), at 1-6.

C.  *Procedural Default*

Respondent first contends that petitioner's fifth through seventh claims, asserting ineffective

assistance of trial counsel for failing to challenge his statement, prosecutorial misconduct by the

introduction of his statement, and cumulative error, are barred by petitioner's procedural default in

the state courts.  The Court should disagree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal.  *See Smith v. Robbins*, 528

U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).  Given that

the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted

claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See*

*Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d

824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of

petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

        Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

        "[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

9

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

10

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Sufficiency of the Evidence (Claims I & II)*

In his first two claims, petitioner contends that the evidence was insufficient to support his conviction. In Claim I, petitioner argues that the trial court erred in denying his motion for a directed verdict because the condemned home could not constitute a "dwelling" under the home invasion statute. In Claim II, he argues that the prosecution presented insufficient evidence of his intent to commit a larceny. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case."  *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime."  *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).  In relevant part, the Michigan home invasion statute provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

MICH. COMP. LAWS § 750.110a(3).  Thus, "[t]he elements of second-degree home invasion are that the defendant (1) entered a dwelling, either by a breaking and entering or without permission, (2)

12

with the intent to commit a felony or a larceny in the dwelling." *People v. Marsee*, No. 295023, 2011 WL 1901952, at *1 (Mich. Ct. App. May 19, 2011) (per curiam) (citing *People v. Nutt*, 469 Mich. 565, 593, 677 N.W.2d 1, 16 (2004)); *see also*, *United States v. Howard*, 327 Fed. Appx. 573, 575 (6th Cir. 2009). Further, the statute defines "dwelling" as "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter." MICH. COMP. LAWS § 750.110a(1).

2.      *Analysis*

a.   *"Dwelling"*

Petitioner first contends that the evidence was insufficient because the house he entered was not a "dwelling" under the home invasion statute. Petitioner argues that because the house had been condemned by the fire marshal and there was nobody living in the house at the time of his entry, the house did not constitute a "dwelling" for purposes of § 750.110a(3). Relying on its prior decision in *People v. Traylor*, 100 Mich. Ap. 248, 298 N.W.2d 719 (1980), the court of appeals rejected this argument. In *Traylor*, the court of appeals explained that a house habitually used as a place of abode constitutes a dwelling, regardless of whether the house is occupied at the time of the breaking and entering. Thus, "[w]hen an inhabitant intends to remain in a dwelling as his residence, and has left it for a temporary purpose, such absence does not change the dwelling into an unoccupied one in the eyes of the law. The intent to return following an absence controls; the duration of the absence is not material. Nor is the structure's habitability germane." *Traylor*, 100 Mich. App. at 252, 298 N.W.2d at 722. The *Traylor* court further concluded that the complainant's testimony that his absence from the home was a temporary one caused by a fire, and that he intended to return to the home and not abandon it, was sufficient to establish that the house was a dwelling. *See id*. at 252-

13

53, 298 N.W.2d at 722.  Relying on the statutory definition of dwelling in § 750.110a(3) and its prior

decision in *Traylor*, the court of appeals in petitioner's case concluded that "the intent of the

inhabitant to use a structure as a place of abode is the primary factor in determining whether it

constitutes a dwelling for purposes of MCL 750.110a(3)."  *Powell*, 278 Mich. App. at 321, 750

N.W.2d at 609.  Because the owner testified that he was absent only because of the fire and intended

to return to reside in the home, and indeed was living in the home at the time of the trial, "a rational

trier of fact [could] find beyond a reasonable doubt that defendant entered a dwelling within the

meaning of the home-invasion statute."  *Id.* at 322, 750 N.W.2d at 609.  This determination was

reasonable.

At the outset, the Michigan court of appeals's construction of the home invasion statute is

not subject to challenge here.  As noted above, "[t]he applicability of the reasonable doubt standard

. . . has always been dependent on how a State defines the offense that is charged in any given case."

*Patterson*, 432 U.S. at 211 n.12; *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421

U.S. 684, 691 (1975).  Thus, "[w]hich acts constitute the elements of a state crime is a question

generally answerable only by the state legislature and state courts."  *Ponnapula v. Spitzer*, 297 F.3d

172, 182 (2d Cir. 2002) (citing *Mullaney*, 421 U.S. at 691 ("This Court ... repeatedly has held that

state courts are the ultimate expositors of state law . . . .")).  "'What is essential to establish an

element, like the question whether a given element is necessary, is a question of state law.'" *Sanford*

*v. Yukins*, 288 F.3d 855, 861 (6th Cir. 2002) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th

Cir. 1991).  As the Second Circuit explained, "*Winship* does not invite federal habeas courts to

engage in a substantive analysis of state statutory terms.  Our federal constitution does not dictate

to the state courts precisely how to interpret their own criminal statutes."  *Id*.  In *Sanford* the Sixth

14

Circuit explained, in language worthy of complete quotation here:

> "*Jackson* establishes that states must act on the basis of sufficient evidence.
> The principle seems unproblematic: it is barbaric to imprison persons who no
> reasonable juror could think had committed a crime. Implementing *Jackson* is not so
> easy as stating its principle, however. Judgments represent the application of law to
> fact. Evidence can be "insufficient" only in relation to a rule of law requiring more
> or different evidence. When a state court enters or affirms a conviction, it is saying
> that the evidence satisfies the legal norms. These norms are for the state to select.
> State law means what state courts say it means. A claim that the state court
> misunderstood the substantive requirements of state law does not present a claim
> under § 2254. "A federal court may not issue the writ on the basis of a perceived
> error of state law." The difference between unreviewable legal interpretations and
> factual claims open under *Jackson* establishes a formidable problem of
> implementation.
>
> Consider four situations in which a defendant might say that the evidence is
> insufficient:
>
> (1) State law defines the combination of elements X, Y, and Z as criminal.
> (Perhaps X is killing, Y is intent to kill, and Z is lack of justification.) The prosecutor
> and the state courts concede that X, Y, and Z are elements of the crime and agree
> with the defendant on their meaning. Defendant contends that there is no basis on
> which the trier of fact could find Z. The state court disagrees and convicts.
>
> (2) Defendant believes that the combination of elements X, Y, and Z is an
> offense. The court disagrees, holding that the state need prove only X and Y. After
> a trial at which the prosecution introduces no evidence of Z, the court convicts the
> defendant.
>
> (3) State law defines the combination of elements X, Y, and Z as criminal.
> Defendant believes that element Z can be satisfied only if the state establishes fact
> Z', but the state court disagrees. After a trial at which the prosecution introduces
> some evidence of Z but does not establish Z', the court convicts the defendant.
>
> (4) State case law defines the combination of elements X, Y, and Z as
> criminal. The supreme court of the state concludes that this is an incorrect
> interpretation of the statute and that the prosecution need establish only X and Y.
> Circumstance Z, the court concludes, is an affirmative defense. After a trial at which
> the prosecution establishes only X and Y, the court convicts the defendant."

*Sanford*, 288 F.3d at 860-61 (quoting *Bates*, 934 F.2d at 102 (internal citations omitted)).  Case (1)

represents the typical *Jackson* claim, which is cognizable on habeas review.  Case (2), however,

presents a pure question of state law that is beyond the reach of a federal habeas court, while Case

(3) likewise is merely a variant of Case (2).  *See id.* at 861 (citing *Bates*, 934 F.2d at 102).

15

Petitioner's claim is essentially Case (3).  He contends that the home invasion statute requires proof that the structure is used as a dwelling at the precise time of the crime.  The Michigan Court of Appeals disagreed, holding that all that is required to establish that the building is a "dwelling" is proof that it is intended by the inhabitant to be used as a place of abode, regardless of any temporary absence or uninhabitability.  Petitioner's argument is not cognizable:

> "What is essential to establish an element, like the question whether a given element is necessary, is a question of state law. To say that state law 'rightly understood' requires proof of Z', and that the evidence is insufficient because the prosecution failed to establish this, is to use *Jackson* as a back door to review of questions of substantive law. Whenever courts consider that possibility expressly[,] they reject claims that convictions should be reversed because state courts misunderstood or misapplied state law. An equally firm rebuff is appropriate when the same claim appears in *Jacksonian* guise."

*Sanford*, 288 F.3d at 861 (quoting *Bates*, 934 F.2d at 103).  Because the prosecution presented sufficient evidence to show that the house was used as a place of abode and that the victim intended to return to the house as his place of abode after the fire damage was repaired, the prosecution presented sufficient evidence to establish that the house was a "dwelling" as the statute has been interpreted by the Michigan Court of Appeals.  Because that interpretation of the statute is not subject to challenge on habeas review, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Intent

Petitioner also contends that the prosecution presented insufficient evidence to establish that he intended to commit a larceny at the time he entered the house.  The Michigan Court of Appeals rejected this claim, reasoning that petitioner's statement to the police that he was removing scrap from the house, combined with circumstantial evidence such as the police hearing a clanking sound consistent with a pipe falling on the concrete in the basement, snow on the ground but not on the

pipes that were on the porch, water leaking from the broken pipes in the basement, and a puddle on

the basement floor that had not yet frozen, provided sufficient evidence to show that petitioner had

removed the pipes while in the basement and that he intended to take the pipes to sell as scrap.  *See*

*Powell*, 278 Mich. App. at 322, 750 N.W.2d at 609-10.  This determination was reasonable.

At the outset, here there was direct evidence of petitioner's intent.  Petitioner stated to the

police that he entered the home in order to remove scrap from the house.  This statement alone

provides sufficient evidence that petitioner intended to commit a larceny.  Further, even apart from

petitioner's statement there was sufficient circumstantial evidence for the jury to conclude beyond

a reasonable doubt that petitioner entered the home with the intent to commit a larceny.  Petitioner

entered the home without permission, and hid from the police when they entered.  The condition of

the pipes suggested that they had recently been cut, and the police heard a sound consistent with a

pipe hitting the floor while petitioner was in the basement.  This circumstantial evidence supports

an inference that petitioner was in the process of removing the pipes when the police arrived, and

thus that he entered the home with the intent to commit a larceny.  It is well-established under

Michigan law that "the felonious intent for a breaking and entering crime may be established by

inferences from circumstantial evidence, including the nature, time, and place of the defendant's

acts." *Tucker v. Palmer*, 541 F.3d 652, 660 (6th Cir. 2008) (internal quotation omitted); *see also*,

*People v. Uhl*, 169 Mich. App. 217, 220, 425 N.W.2d 519, 521 (1988).  "Furthermore, because it

is difficult to prove a defendant's state of mind, minimal circumstantial evidence is sufficient."

*Tucker*, 541 F.3d at 660 (internal quotation omitted).

Petitioner essentially argues that the circumstantial evidence could equally point to someone

else as having cut the pipes.  This argument, however, fails to account for the clanging sound heard

17

by the officers or petitioner's statements to them.  And, even if petitioner's assertion was correct, it does not render the evidence constitutionally insufficient.  That the evidence might equally support other, innocent, inferences is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient.  *See Jackson*, 443 U.S. at 326.  Because the prosecution presented sufficient evidence from which the jury could conclude beyond a reasonable doubt that petitioner entered the house with the intent to commit a larceny, petitioner is not entitled to habeas relief on this claim.

F.      *Disproportionate Sentence (Claim II)*

Petitioner next contends that his sentence of 10-20 years' imprisonment, to be served consecutive to the sentences imposed as a result of his violation of parole, is disproportionate to his offense and thus amounts to cruel and unusual punishment under the Eighth Amendment.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

To the extent that petitioner relies on the Michigan proportionality rule established in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), his claim is solely one of state law which is not cognizable on federal habeas review.  *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.).  Thus, the only question here is whether petitioner's sentence violates the Eighth Amendment.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of the offense and the harshness of the penalty;

18

(ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id*. at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are 'grossly' disproportionate to the crime. *See id*. at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id*. at 1005-06.[1] Thus, it is unclear whether, and to what extent,

---

[1] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

19

*Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id.* at 997-1001 (Kennedy, J.).

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor,

J.) Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id.* at 32 (opinion of Scalia, J.); *id.* at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id.* at 36-37 (opinion of Breyer, J.).  Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

  2. *Analysis*

  Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relief on this ground. Petitioner received a sentence of 10-20 years' imprisonment for his home invasion of a dwelling which caused significant additional damage to the home.  This sentence was authorized by law and

not so severe as to lead to inference of gross disproportionality. *See Moore v. Renico*, 01-CV-10128, 2002 WL 1285510, at *3 (E.D. Mich. June 10, 2002) (upholding 10-15 year sentence for second degree home invasion); *People v. Alexander*, 234 Mich. App. 665, 679-80, 599 N.W.2d 749, 756-57 (1999) (upholding 15-22 year habitual offender sentence for second degree home invasion). Further, petitioner was on parole at the time of the offense, and was sentenced as a fourth habitual offender based on a criminal history that included seven felony and nine misdemeanor convictions. *See* Sentence Tr., at 6-8. Petitioner's recidivism alone compels the conclusion that his sentence was not grossly disproportionate to his offense. *See Lockyer*, 538 U.S. at 73-77 (upholding sentence of 25 years' to life imprisonment for theft under recidivist statute); *Ewing*, 538 U.S. at 28-30 (same); *Rummel*, 445 U.S. at 284-85 (mandatory sentence of life imprisonment under recidivist statute not disproportionate where defendant's three qualifying convictions were all nonviolent theft offenses involving a total of less than $230). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Confession (Claim VI)*

Petitioner next contends that the trial court improperly admitted his confession, which he alleges was coerced and taken in violation of his *Miranda* rights. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Clearly Established Law*

As the Supreme Court explained in *Jackson v. Denno*, 378 U.S. 368 (1964), "a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession." *Jackson*, 378 U.S. at 376. "Determining whether a confession is 'voluntary' for due process purposes entails

22

an examination into the 'totality of the circumstances' to determine whether the confession was procured by acceptable techniques that draw upon an essentially free and unconstrained choice or by unacceptable tactics that extract their results from an overborne will.  The critical line of distinction is between 'self-direction' and 'compulsion.'" *Cooper v. Scroggy*, 845 F.2d 1385, 1390 (6th Cir. 1988) (citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)); *accord Dickerson v. United States*, 530 U.S. 428, 434 (2000).  It is not enough that a defendant's will was "overborne" by some factor for which state officials are not responsible.  "Coercive police conduct is a necessary prerequisite to the conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive conduct and the confession." *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).  There is no bright line test for determining whether a confession is voluntary, nor is any one factor dispositive.  Rather, a court must "look[] to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case.  Relevant factors may include the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length and extent of the questioning; and the use of physical punishments, such as the deprivation of food or sleep." *United States v. Mahan*, 190 F.3d 416, 422-23 (6th Cir. 1999) (internal quotation and citation omitted); *accord*, *Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994).

For purposes of habeas review, "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a [legal] matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  However, a state court's findings of historical fact are

presumed by this Court to be correct unless rebutted by petitioner with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). *See generally*, *Townsend v. Sain*, 372 U.S. 293, 309 n.6 (1963) (factual findings entitled to a presumption of correctness under the habeas statutes are those relating to "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators.") (internal quotation omitted). Thus, "subsidiary factual questions, such as whether . . . in fact the police engaged in the intimidation tactics alleged by the defendant are entitled to the § 2254[(e)(1)] presumption." *Miller*, 474 U.S. at 112; *see also*, *id.* at 117.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court considered the applicability of the Fifth Amendment's Self-Incrimination Clause to custodial interrogations by the police. The Court ruled that, in some circumstances, statements made while in custody can violate the Self-Incrimination Clause even if the statement was otherwise "voluntary" under the Due Process Clause. As the Court has more recently explained, the *Miranda* decision

> concluded that the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be "accorded his privilege under the Fifth Amendment . . . not to be compelled to incriminate himself." [*Miranda*, 384 U.S.] at 439. Accordingly, we laid down "concrete guidelines for law enforcement agencies and courts to follow." *Id.*, at 442. Those guidelines established that the admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." *Id.*, at 479.

*Dickerson v. United States*, 530 U.S. 428, 435 (2000) (parallel citations omitted). The *Miranda* Court explained that if the suspect indicates that he wishes to remain silent, "the interrogation must cease." *Miranda*, 384 U.S. at 474. Similarly, if the suspect requests counsel "the interrogation must

cease until an attorney is present." *Id*.; *see also*, *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). Although it has been characterized otherwise at times, the rule of *Miranda* is of federal constitutional dimension. *See Dickerson*, 530 U.S. at 438-40. Thus, claims based on the right to counsel at questioning recognized in *Miranda* are cognizable on habeas review. *See id*. at 439 n.3; *Thompson v. Keohane*, 516 U.S. 99, 107 n.5 (1995).

In determining the validity of the police interrogation, the ultimate issues of whether petitioner waived his rights to remain silent and to counsel are legal determinations to be reviewed under § 2254(d)(1). *See, e.g.*, *Thompson*, 516 U.S. at 112-13 (determination of whether interrogation was a "custodial interrogation" under *Miranda* is a legal determination not subject to the presumption of correctness for state court findings of historical fact); *Brewer v. Williams*, 430 U.S. 387, 397 n.4 (1977) (same as applied to question of whether petitioner validly waived his Sixth Amendment right to counsel). However, as with the voluntariness issue, the state courts' resolution of the underlying historical facts are presumed correct unless rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

    2.    *Analysis*

Here, petitioner has failed to point to anything to suggest that his statement was involuntary or that he was subjected to custodial interrogation. The only record evidence regarding the statement is the testimony of Officer Woods, who testified that petitioner made an unsolicited statement that he saw the sign indicating the house was condemned and decided to remove scrap from the house. *See* Trial Tr., Vol. I, at 238. Petitioner has presented no evidence to the contrary, not even his own affidavit. And as the trial court observed, petitioner "has made contradictory claims regarding his purported statement to the police," arguing in his application for leave to appeal

that he told appellate counsel he never made the statement, but arguing in his motion for relief from judgment that he made the statement but that it was involuntary. MRJ Order, at 5. Petitioner's unsworn, unsupported, and contradictory statements are insufficient to raise any factual question as to whether his statement was unsolicited by the police. And given that fact, petitioner cannot show that the statement was involuntary or taken in violation of his *Miranda* rights.

*Miranda* is applicable only where there has been a custodial "interrogation," which the Supreme Court has defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Here, however, there was no custodial "interrogation" of defendant at the time he made his statement. Rather, the record shows that petitioner's statement was a spontaneous utterance made by him at the time of his arrest, and *Miranda* thus did not bar its admission. *See United States v. Shea*, 150 F.3d 44, 47 (1st Cir. 1998); *United States v. Kalter*, 5 F.3d 1166, 1168-69 (8th Cir. 1993); *United States v. Angello*, 452 F.2d 1135, 1141 (2d Cir. 1971). Further, nothing in the record suggests that there were any circumstances existing at the time of the statement which overbore petitioner's will, rendering his statement involuntary. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Ineffective Assistance of Counsel (Claims IV & V)*

Petitioner next claims that he was deprived of the effective assistance of both trial and appellate counsel. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

26

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id*. With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

In evaluating the performance of appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring

28

a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id*. As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

    2.    *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to move to suppress his statement to the police. In order to establish prejudice in these circumstances, defendant must establish both "that had the motion been filed, there was a reasonable probability that the evidence would have been suppressed, and the outcome of the trial would have been different had the evidence been suppressed." *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Petitioner cannot do so. As explained above, petitioner has failed to present any evidence to show that his statement was anything other than a voluntary, unsolicited statement. It is petitioner's burden to demonstrate both that counsel's performance was deficient and that he was prejudiced by counsel's performance. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). In the absence of any such evidence, petitioner cannot show a reasonable probability that a motion to suppress would have been successful. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel issue on direct appeal, and for failing to seek a remand to correct the scoring of the sentencing guidelines.  These claims are without merit.

The record shows that counsel raised three substantial issues on appeal, two of which if successful would have resulted in the reversal of petitioner's conviction without the possibility of retrial.  As explained above, the evidence in the record establishes that petitioner's statement to the police was unsolicited and voluntary, and petitioner has pointed out nothing tending to establish the contrary.  Because counsel presented significant issues on appeal and the ineffective assistance of trial counsel claim is without merit, petitioner cannot show that appellate counsel was deficient in falling to raise the trial counsel claim on direct appeal, nor can he show a reasonable probability that such a claim would have been successful.  With respect to the presentence report issue, this claim is procedurally defaulted, because the trial court rejected the claim on the basis that petitioner "has not briefed the merits of his . . . claim . . . [and thus] the argument is deemed abandoned and otherwise waived."  MRJ Order, at 9.  Further, even if not defaulted, petitioner cannot show that he was prejudiced because he cannot show a reasonable probability that his sentence would have been less severe had counsel raised the guidelines scoring issue.  Petitioner contends that he was inappropriately scored 10 points under the sentencing guidelines for his role as a leader under Offense Variable (OV) 14, MICH. COMP. LAWS § 777.44. Under OV-14, 10 points are assigned if the defendant "was a leader in a multiple offender situation."  MICH. COMP. LAWS § 777.44(2)(a). Here, the evidence in the record supports a finding that petitioner was a leader in a multiple offender situation.  The evidence, including petitioner's own statement that he was at the house with his

30

girlfriend and her actions outside the house, supports the conclusion that Victoria Hill was a participant in the crime, rendering the crime a "multiple offender situation." Further, there was evidence that petitioner was the leader in the crime. Petitioner was the one inside the home removing the pipe, while Hill was outside. *See People v. Butts*, No. 295392, 2011 WL 476474, at *2 (Mich. Ct. App. Dec. 10, 2011); *cf. People v. Apgar*, 264 Mich. App. 321, 330-31, 690 N.W.2d 312, 318-19 (2004) (10 points for leadership supported by evidence that defendant had most contact with the victim and greatest connection to the crime). Further, petitioner admitted to the police that he had entered to take scrap because he had seen the condemnation sign, suggesting that it was his idea to commit the crime. Based on these facts, "[a] natural inference is that [petitioner] was the impetus in this criminal episode," supporting a score of 10 points under OV-14. *People v. Williams*, No. 284981, 2009 WL 2952568, at *3 (Mich. Ct. App. Sept. 15, 2009). Under Michigan law, "[a] sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score. 'Scoring decisions for which there is any evidence in support will be upheld.'" *People v. Hornsby*, 251 Mich. App. 462, 468, 650 N.W.2d 700, 704 (2002) (quoting *People v. Elliott*, 215 Mich. App. 259, 260, 544 N.W.2d 748, 749 (1996)). Because there was sufficient evidence to support the trial court's scoring of OV-14, petitioner cannot show that he was prejudiced by trial counsel's failure to object to the scoring, nor can he show that appellate counsel was ineffective for failing to raise the issue on appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Cumulative Error (Claim VII)*

Finally, petitioner contends that he was denied a fair trial by the cumulative effect of the errors at his trial. The Court should conclude that petitioner is not entitled to habeas relief on this

31

claim.  It is true that "[e]rrors which standing alone may be deemed harmless or insufficiently prejudicial to amount to a denial of due process may cumulatively produce a trial setting which is fundamentally unfair." *Payne v. Janasz*, 711 F.2d 1305, 1316 (6th Cir. 1983) (Jones, J., dissenting); *accord Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983).  This rule, however, applies only to constitutional errors; the accumulation of non-errors cannot collectively amount to a violation of due process.  *See Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *United States v. Lumpkin*, 192 F.3d 280, 290 (2d Cir. 1999); *McKinnon v. Ohio*, No. 94-4256, 1995 WL 570918, at *12 (6th Cir. Sept. 27, 1995); *Fero v. Kerby*, 39 F.3d 1462, 1475 (10th Cir. 1994).  As noted and discussed in this Report, none of petitioner's claims establish constitutional error, and thus his cumulative error claim fails.

J.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

        As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

32

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

33

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. It is clear that the state court's conclusion that the house constituted a "dwelling" under the home invasion statute is a binding interpretation of state law not subject to challenge on habeas review. Thus, the resolution of petitioner's first claim is not reasonably debatable. Likewise, because petitioner admitted to the police that he entered the home to take scrap and because the circumstantial evidence supports a finding that petitioner entered the home with the intent to commit a larceny, it is not reasonably debatable that the prosecution presented sufficient evidence of petitioner's intent. With respect to petitioner's sentencing claim, petitioner's sentence was within the legislatively prescribed maximum term of imprisonment, and was based on petitioner's extensive criminal history. Thus, it is not reasonably debatable that petitioner's sentencing was not grossly disproportionate to his offense. Because the evidence in the record supports only the conclusion that petitioner's statement to the police was a voluntary, unsolicited statement, and because petitioner has presented no evidence to the contrary, the conclusion that petitioner's statement was voluntary and not in taken in violation of *Miranda* is not reasonably debatable. Further, because the underlying claims relating to the statement are without merit, and because OV-14 was properly scored as a matter of state law, it is not reasonably debatable that petitioner has failed to establish that trial and appellate counsel were ineffective. Finally, because the resolution of his underlying claims is not reasonably debatable, it follows that it is not reasonably debatable that petitioner is not entitled to relief on his cumulative error claim. Accordingly, the Court should deny petitioner a certificate of appealability.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

34

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/3/12

> The undersigned certifies that a copy of the foregoing
> order was served on the attorneys of record and  by
> electronic means or U.S. Mail on January 3, 2012.
>
>                                   s/Eddrey Butts
>                                   Case Manager